IN THE UNITED SATE DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

WENDY KELLOG,
STATE FARM FIRE AND CASUALTY
COMPANY,

    Plaintiffs,

v.                                                                  Case No. 16-cv-1187 SCY/LF

WHEATON VAN LINES,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiffs' Motion for Summary Judgment on Defendant's Second and Third Defenses (Doc. 19) and Defendant's Motion for Summary Judgment (Doc. 24). The issues contained in these Motions substantially overlap. The central question is whether Plaintiffs' claims are either time barred or, in the case of Plaintiffs' state law claims, preempted under 49 U.S.C. § 14706 ("Carmack Amendment"). For the reasons stated below, the Court concludes that Defendant's Motion for Summary Judgment is well-taken and shall be GRANTED. Because the Court grants Defendant's Motion, Plaintiffs' Motion is accordingly DENIED.

I.    **BACKGROUND**

The undisputed material facts are as follows. In early September 2013, Plaintiff Wendy Kellog contracted with Defendant Wheaton Van Lines to move her personal belongings from Yorktown Heights, New York, to Solana Beach, California. Doc. 19 at 2; Doc. 23. A bill of lading set forth the contractual terms for the shipment of Kellog's belongings.[1] On October 18,

---

[1] The parties cite various portions of the bill of lading in their undisputed material facts. To the extent that these portions become relevant to the determination of the issues herein, the Court will address them in its analysis.

1

2013, as a result of a problem at the van's rear trailer axle, the moving van caught fire in New Mexico and destroyed Kellog's belongings. Doc. 19 at 2; Doc. 23 at 4. The damage to Kellog's property totaled $59,674.48. Doc. 30-4 at 10.  Kellog had insurance through State Farm which, after applying the $5000 deductible, paid her $54,674.48. Doc. 30-4 at 10.

The parties do not dispute that they exchanged the following communications in the aftermath of the fire.  Doc. 19 at 3; Doc. 23 at 2-3. On November 8, 2013, State Farm, on behalf of Kellog, notified Wheaton of the loss.  State Farm's letter stated, "Please consider this as notice of our possible subrogation claim[.]" Doc. 23-2 at 4. On January 22, 2014, State Farm sent a second letter to Wheaton representing that State Farm considered Wheaton responsible for the loss. Doc. 30-4 at 3. The letter referenced a claim number that Wheaton had established for the matter. Doc. 30-4 at 3.  However, the letter indicated that the amount of the claim was "to be determined." Doc. 30-4 at 3.  On January 23, 2014, State Farm sent a similar letter to Wheaton's insurance carrier, McLarens International.  Doc. 23-2 at 6. This letter indicated that State Farm had paid Kellog for her loss, that State Farm considered Wheaton responsible for the loss, and that it was State Farm's position that it was entitled to recovery from Wheaton. Doc. 23-2 at 6. The letter again reiterated that the amount of the claim was "to be determined" and that "[o]nce our claim handling has been completed, we will provide you with documentation to support our subrogation demand." Doc. 23-2 at 6.

On February 6, 2014, McLarens International confirmed receipt of the letter and notice of subrogation interest and requested that it be updated regarding the matter.  Doc. 30-4 at 6. McLarens International requested that State Farm provide it "with the loss inventory and supporting documentation for [State Farm's] subrogation claim."  Doc. 30-4 at 6. McLarens International's letter also included a reference number for the matter. Doc. 30-4 at 6. McLarens

International further notified State Farm on April 1, 2014 that an examination of the moving van would occur on April 18, 2014. Doc. 30-4 at 8. On February 19, 2015, McLarens International again requested in writing that State Farm provide it "with the loss inventory and supporting documentation for your subrogation claim." Doc. 30-4 at 9. State Farm did not respond to that letter until over a year later. On May 9, 2016, State Farm replied that its subrogation demand totaled $59,674.48. Doc. 30-4 at 10. To date, Defendant has not paid Plaintiffs' claim and on September 19, 2016, Plaintiffs filed suit against Defendant.

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), this Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant meets this burden, Rule 56(c) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

"An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Thom v. Bristol Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal citation omitted). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A). All material facts set forth in the

3

motion and response which are not specifically controverted are deemed undisputed. D.N.M.LR-Civ. 56.1(b).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to determine whether a genuine issue exists as to material facts requiring a trial. *See Liberty Lobby*, 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party, and construe all evidence in the light most favorable to the non-moving party. *See Hunt v. Cromartie*, 526 U.S. 541, 550–55 (1999). Third, the court cannot decide any issues of credibility. *See Liberty Lobby*, 477 U.S. at 255. "[T]o survive the . . . motion, [the nonmovant] need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

## III. ANALYSIS

As an initial matter, the Court addresses ambiguity in the bases on which Plaintiffs' support their Motion for Partial Summary Judgment (Doc. 19). Both the title of the motion and the opening sentence represent that Plaintiffs are moving for summary judgment on Defendant's second and third affirmative defenses. *See* Doc. 19 at 1 ("Plaintiffs…hereby move this Court for partial summary judgment on the Second and Third Defenses…"). Defendant's second defense is that "The Carmack Amendment completely pre-empts any and all state law-based claims against a carrier arising out of the loss of or damage to the goods being carried." Doc. 6 at 3. Both in their analysis and their proposed undisputed material facts, however, Plaintiffs neither argue nor cite evidence relevant to whether their state law claims are preempted. Plaintiffs instead cite to Defendant's fourth defense in their undisputed material facts which is that Plaintiffs' claims are time barred based on the contract between Kellog and Wheaton. Doc. 19 at 1 (citing Doc. 6 at 3). Additionally, Plaintiffs request at the end of their motions that the Court

"grant partial summary judgment to Plaintiffs…as to Defenses Three and Four in the answer…" Doc. 19 at 5. Because Plaintiffs offer neither evidence nor argument relevant to the issue of whether their state law claims are preempted by the Carmack Amendment, the Court construes Plaintiffs' Motion to be a request that partial summary judgment be entered in their favor in regard to Defendant's third and fourth defenses.

That said, in further reviewing Plaintiffs' briefing, the Court is unable to parse the difference between Plaintiffs' arguments regarding the adequacy of their claim under the Carmack Amendment and the adequacy of the claim pursuant to the contractual arrangement between the parties. Plaintiffs' argument section totals four relatively succinct paragraphs contending that Plaintiffs gave adequate notice of their claim. *See* Doc. 19 at 4-5. While Plaintiffs appear to further expound on the contractual provisions in their reply brief, the relevant portions of the contract cited by Plaintiffs do no more than reiterate the notice provisions of the Carmack Amendment and the controlling regulation, 49 C.F.R. § 370.3.[2] In other words, because the bill of lading requires that a claim be filed in accordance with the Carmack Amendment, to the extent the Court will address the parties' contract, it will do so in relation to whether Plaintiffs' notice of claim was sufficient pursuant to the Carmack Amendment.

With this confusion aside, the Court clarifies the issues before it. First, Plaintiffs and Defendant both seek summary judgment on the issue of whether Plaintiffs' claim was adequate and timely pursuant to the Carmack Amendment. Second, Defendant argues it is entitled to

---

[2] Plaintiffs further discuss a number of Wheaton's tariff provisions in their reply brief. *See* Doc. 30 at 5-10. However, Wheaton limited the reach of the majority of these provisions to the "processing of claims for overcharge, duplicate payment or overcollection for the transportation of property." Doc. 30 at 5. Wheaton's procedures for filing these types of claims are not at issue in this litigation. Further, while some of the tariff provisions cited by Plaintiffs discuss claims for loss or damage to transported property, these provisions track the procedures set out in 49 C.F.R. § 370.3.

5

summary judgment on Plaintiffs' state law claims because the Carmack Amendment preempts those claims. The Court will address these issues in turn.

### A. Plaintiffs' Failed to Provide a Timely Claim for a Specific or Determinable Amount of Money

Both sides claim they are entitled to summary judgment on the issue of whether Plaintiffs' claim was adequate and timely pursuant to the Carmack Amendment. To resolve this issue the Court must address whether Plaintiffs' communications with Defendant, and its insurer McLarens International, timely complied with the notice provisions of the Carmack Amendment, 49 U.S.C. § 14706 and 49 C.F.R. 370.3. Defendant contends that Plaintiffs failed to timely provide a specific or determinable amount of damages in their notice of claim. The Court agrees that Plaintiffs failed to provide timely and adequate notice under the Carmack Amendment.

"The Carmack Amendment codifies an initial carrier's liability for goods lost or damaged in shipment." *A.T. Clayton & Co., Inc. v. Missouri-Kansas-Texas R. Co.*, 901 F.2d 833, 834 (10th Cir. 1990). The statute provides that a carrier is liable to the shipper for "the actual loss or injury to the property[.]" 49 U.S.C. § 14706(a)(1). The purpose behind the Carmack Amendment is to "(1) hold carriers responsible for damage they cause to transported goods; (2) to encourage payment of claims without litigation; (3) to facilitate prompt investigation of claims; and (4) to prevent carriers from discriminating against shippers by paying claims of favored shippers while rejecting claims of others." *Molloy v. Allied Van Lines, Inc.*, 267 F.Supp.2d 1246, 1251-52 (M.D. Fla. 2003).

The Carmack Amendment, and regulations promulgated thereunder, contain the procedures for filing a claim with a carrier. The Carmack Amendment provides that a carrier may contractually limit the time within which a shipper may file a claim, provided that the time period not be less than nine months. 49 U.S.C. § 14706(e)(1) ("A carrier may not provide by

6

rule, contract, or otherwise, a period of less than 9 months for filing a claim against it[.]"). Consistent with this restriction, the bill of lading in the present case provided that a claim must be brought within nine months. Doc. 24-1 at 6. The bill of lading further provided that "[w]here a claim is not filed or suit is not instituted in accordance with the foregoing provisions, Wheaton shall not be liable and such claim will not be paid." Doc. 24-1 at 6.

The minimum filing requirements for a claim are contained in 49 C.F.R. § 370.3. This regulation provides that a claim must be in writing, unless the carrier and shipper agree that an electronic communication is permissible, and be received within the time limits specified in the bill of lading or contract of carriage or transportation. § 370.3(b). The regulation states that in order to sufficiently comply with the minimum filing requirements, the notice of claim must (1) contain facts sufficient to identify the baggage or shipment; (2) assert liability for the alleged loss, damage, injury, or delay; and (3) make a claim for the payment of a "specified or determinable amount of money." § 370.3(b)(1)-(3). The regulation further prohibits a carrier from voluntarily paying a claim until it receives "a formal claim in writing for a specified or determinable amount of money." § 370.3(d).

In the present case, the bill of lading provided that Plaintiffs' claim needed to be filed within nine months of the loss. The parties accordingly agree that the deadline for Plaintiffs to file their claim was July 18, 2014. Doc. 31 at 1; Doc. 24 at 2. Defendants do not contend that Plaintiffs failed to properly notify Defendant of the identity of the shipment at issue and assert liability for the loss pursuant to § 370.3(b)(1)-(2). Defendants do dispute, however, that claimant timely asserted a claim for a "specified or determinable amount of money" as § 370.3(b)(3) requires.

Federal circuit courts are split on the degree of specificity a claimant must include in his or her notice of claim under § 370.3(b)(3). The First, Second, and Fifth Circuits are considered "strict compliance" jurisdictions. *See Bowman v. Mayflower Transit, LLC*, 914 F.Supp.2d 47 (D. Mass. 2012) (stating that the phrase "'payment of a specified or determinable amount of money' is strictly construed in the First Circuit; the claim must demand an exact dollar value"); *Pathway Bellows, Inc. v. Blanchette*, 630 F.2d 900-903 (2d Cir. 1980) (applying strict compliance standard to the claimant's notice of claim in concluding that its failure to timely file a claim asserting liability and setting forth a specific amount of damages precluded recovery); *Salzstein v. Bekins Van Lines*, 993 F.2d 1187, 1189-90 (5th Cir. 1993) (adopting strict compliance test). Generally speaking, "Courts following a strict compliance standard routinely find that claims are insufficient unless some price is quoted." *Parramore v. Tru-Pak Moving Systems, Inc.*, 286 F.Supp. 643, 653 (M.D.N.C. 2003).

On the other hand, the Sixth, Ninth, and Third Circuits utilize a substantial compliance standard. In *Trepel v. Roadway Exp., Inc.*, for instance, the Sixth Circuit stated that a claimant is not required to state a specific amount but instead must provide "a reasonably accurate indication of the value of the claim." 194 F.3d 708, 713 (6th Cir. 1999). Similarly, in *Insurance Company of North America v. GI Trucking Company*, the Ninth Circuit held that a written notice was sufficient where it gave "a reasonable estimate of the claimed amount." 1 F.3d 903, 907 (9th Cir. 1993). More recently, in *Lewis v. Atlas Van Lines, Inc.*, the Third Circuit emphasized that the terms "specific" and "determinable" have unique meanings and therefore the regulation does not require that a specific amount of money be claimed. 542 F.3d 403, 410 (3d Cir. 2008). The Third Circuit explained that a claim for an amount of money is determinable if it "is merely capable of being determined or ascertained." *Id.* at 409 (internal quotation marks and alterations

omitted). The Court accordingly concluded that a claim is deficient when it "does not contain sufficient information to put the carrier on notice of the nature and extent of its liability." *Id.* at 410. These cases emphasize that the purpose of the notice requirement "is not to permit the carrier to escape liability, but to insure that the carrier may make a prompt and thorough investigation of the claim." *Id.*; *Trepel*, 194 F.3d at 713 ("the purpose of the claim regulation is not to permit the carrier to escape liability but to insure that the carrier has enough information to begin processing the claim"); *Lewis*, 542 F.3d at 411 (same).

The Tenth Circuit has not construed § 370.3(b)'s requirement that a claimant make a "claim for the payment of a specified or determinable amount of money." However, in previously construing the Carmack Amendment, the Tenth Circuit applied a standard more akin to the substantial compliance test in reviewing whether a claimant's notice was sufficient. *See Atchison, Topeka and Santa Fe Railway Company v. Littleton Leasing and Investment Company, Inc.*, 582 F.2d 1237, 1238, 1240 (10th Cir. 1978) (holding that the claimant's notice did not substantially comply with the notice requirement of the Carmack Amendment and stating that "[i]t must be remembered that the purpose of the notice requirement is not to escape liability but to facilitate prompt investigation"). Additionally, the Court has reviewed two cases from district courts within the Tenth Circuit. In *Tesmer v. Allied Van Lines, Inc.*, the district court held that the notice provided by the claimant was sufficient under either standard because the claimant specified a definitive sum of money in the notice. 82 F.Supp.2d 1216, 1219 (D. Kan. 2000). However, in *Clair v. Emricks Van and Storage Company*, the district court utilized the strict compliance test and held that the plaintiff's claims were barred because she failed to specify the amount of her claim. 33 F.Supp.2d 965, 968-69 (W.D. Okla. 1999). The court further rejected the plaintiff's argument that her claims substantially complied with the regulations because it

would have been relatively easy for the defendants to determine the amount of her claim. *Id.* at 969 n.4.

The lack of clear guidance in the Tenth Circuit about the appropriate standard ultimately does not matter, however, because the Court concludes that Plaintiffs' claim is barred regardless of which standard applies. First, it is undisputed that Plaintiff did not timely file a claim for a *specific* amount of money. Thus, Plaintiffs' claim would undoubtedly be deficient under the strict compliance standard. *See Bowman v. Mayflower Transit LLC*, 914 F.Supp.2d 47, 50 (D. Mass 2012) (applying strict compliance standard in holding that the notice was insufficient where claimant indicated that the amount of the claim was to be determined).

Turning to the substantial compliance standard, the Court concludes that Plaintiffs neither provided Wheaton a reasonable estimate of their damages nor supplied it with information sufficient to put it on notice of the nature and extent of its purported liability. Over the course of State Farm's communications with Defendant and its insurer during the nine month period, State Farm consistently represented that the amount of the claim was "to be determined." *See* Doc. 30-4 at 3, 30-4 at 5. Further, in State Farm's final communication with Defendant's insurer during the relevant timeframe, State Farm stated that "[o]nce our claim handling has been completed, we will provide you with documentation to support our subrogation demand." Doc. 30-4 at 5. Noticeably absent from these communications is any type of estimate of Plaintiffs' damages, much less any representation regarding the extent of the damages that Plaintiffs were seeking. Thus, far from providing a determinable amount of the claim, these representations are by their very nature indeterminate.

Perhaps in recognition of the fact that State Farm's communications with Defendant fail to establish a claim for a determinable amount of money, Plaintiffs contend that no dispute

10

existed about the amount of Plaintiffs' claim because Kellog and Wheaton had estimated the value of her belongings in the bill of lading to be $56,400. *See* Doc. 30-2 at 1. Plaintiff further contends that an inventory of Kellog's goods attached to the bill of lading was sufficient to appraise Wheaton as to the value of Kellog's belongings. While the Court is sympathetic to Plaintiffs' argument, these arguments fail as a legal matter.

First, Plaintiffs' consistent representations that the amount of their claim was undetermined indicated Plaintiffs' damages *could not* be determined from the bill of lading. In other words, because the amount listed in the bill of lading was known to both parties in the aftermath of the fire, Plaintiffs' representations in their notice of claim that their demand was undetermined was necessarily a representation that the bill of lading did not constitute an accurate estimation of their claim.

Second, if accepted, Plaintiff's argument would nullify the regulatory scheme in place. Section 370.3(b) requires a claimant to provide a claim for a specific or determinable amount of money. Under Plaintiffs' argument, in order to state a sufficient claim, a claimant would need only identify the shipment and assert liability because the carrier would then be responsible to determine the nature and extent of its liability from the bill of lading and any documentation attached thereto. The regulation clearly does not countenance this because it places the burden on the claimant to affirmatively claim a specific or determinable amount of money. *See* 49 C.F.R. § 370.3(b). No indication exists that this regulation can be ignored in favor of reliance on information contained in the bill of lading.

Furthermore, § 370.3 provides the responsibilities of a carrier when it receives a claim for an uncertain amount. *See* 49 C.F.R. § 370.3(d). While this provision does require a carrier to begin investigating such a claim, the regulation specifically precludes a carrier from voluntarily

11

paying a claim in the absence of a claim for a specific or determinable amount of money consistent with § 370.3(b). Wheaton complied with the investigation part of this requirement by initiating an investigation and assigning the matter a claim number when Plaintiffs filed a claim for an uncertain amount. Further, as part of its investigation, Wheaton attempted on multiple occasions to obtain from Plaintiffs a more definitive statement of the nature and extent of its purported liability. During the relevant timeframe, however, Plaintiffs consistently represented that the amount of the claim was still being determined. Thus, even had Wheaton utilized the estimated value of Kellog's belongings from the bill of lading, as Plaintiffs contend Wheaton should have, Plaintiffs' argument ignores the fact that § 370.3(d) would still preclude it from paying the claim until Plaintiffs made a formal demand for a specific or determinable amount of money. This preclusion applies even in the event Wheaton was able to "ascertain as nearly as possible the extent…of the loss or damage for which it may be responsible" from the bill of lading or the inventory of Kellog's goods attached thereto. *See* § 370.3(d).

Finally, to the extent that Plaintiffs argue that Wheaton was somehow obligated to notify Plaintiffs that their claim was deficient, the Court rejects this argument as it finds no support in either the Carmack Amendment or § 370.3. Similarly, Plaintiffs cite to no case law supporting such a duty.

Even if such a duty could be said to exist, however, it would not change the Court's conclusion. Wheaton requested on multiple occasions that Plaintiffs provide it with the amount of the claim. Plaintiffs repeatedly failed to do so. An important function of the notice requirement is to facilitate "voluntary resolution [of claims] by ensuring that both shipper and carrier have adequate information to evaluate liability and the extent of damages. *See Nedlloyd Lines, B.V. Corp. v. Harris Transport Co., Inc.*, 922 F.2d 905, 908 (1st Cir. 1991). "Leisurely

approaches and periods of procrastination are inconsistent with both the legislative goal of the Carmack Amendment and the standards applied by the courts." *Cherkis v. Atlas Van Lines, Inc.*, 59 F.Supp.2d 203, 208 (D. Mass. 1999). Accordingly, the Court concludes that Plaintiffs failed to submit a claim which met the minimum filing requirements within the requisite nine month period and that summary judgment must therefore be entered in Wheaton's favor.

### B.  The Carmack Amendment Preempts Plaintiffs' State Law Claims

Defendant contends that the Carmack Amendment preempts Plaintiffs' state law claims which are for negligence, negligence per se, and breach of contract. Plaintiff does not address this argument. Nevertheless, in the analyzing Defendant's argument, the Court agrees with Defendant.

As noted above, the parties have stipulated that the Carmack Amendment controls the issues in this case. Doc. 19 at 1; Doc. 24 at 4. "Congress, in enacting the Carmack Amendment, intended to take possession of the subject [of interstate carriers' liability], and supersede all state regulation with reference to it in order to establish uniformity of liability." *Raineri v. North America Van Lines, Inc.*, 906 F.Supp.2d 334, 340 (D.N.J. 2012) (internal quotation marks and alterations omitted). Thus, the Tenth Circuit, consistent with every other federal circuit, has held that the "Carmack Amendment preempts state common law remedies against common carriers for negligent loss or damage to goods shipped under a lawful bill of lading." *Underwriters at Llyods of London v. North American Van Lines*, 890 F.2d 1112, 1120-21 (10th Cir. 1989) (noting that every other circuit to have considered the matter "has either held or indicated it would hold that the Carmack Amendment preempts state common law remedies against a carrier for negligent damage to goods shipped under a proper bill of lading.").  The preemptive effect extends to breach of contract claims. *See Margetson v. United Van Lines, Inc.*, 785 F.Supp. 917,

919 (D.N.M. 1991) ("Courts have consistently recognized the preemptive effect of the Carmack Amendment over breach of contract claims."). Accordingly, the Court concludes that Plaintiffs' state law claims for negligence, negligence per se, and breach of contract are preempted.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. 24) is GRANTED. As a consequence, Plaintiffs' Motion for Summary Judgment on Defendant's Second and Third Defenses (Doc. 19) is DENIED.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE
Sitting by Consent